**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| NATURAL EXTRACTION SYSTEMS, LLC<br><br>                    Plaintiff,<br><br>vs.<br><br>TRULIEVE INC. and<br>TRULIEVE CANNABIS CORP.<br><br>                    Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Natural Extraction Systems, LLC, ("NES" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Trulieve Inc. ("Trulieve US") and Trulieve Cannabis Corp. ("Trulieve Cannabis") (collectively "Defendants" or "Trulieve") for patent infringement and alleges as follows:

## NATURE OF THE ACTION

1.      This action for patent infringement arises out of Defendants' infringement of NES's U.S. Patent No. 10,669,248 ("the '248 patent," Exhibit A), U.S. Patent No. 11,643,402 ("the '402 patent," Exhibit B), U.S. Patent No. 12,297,181 ("the '181 patent," Exhibit C), and U.S. Patent No. 12,420,214 ("the '214 patent," Exhibit D) (collectively the "Asserted Patents"). NES brings this action to compel Defendants both to compensate NES for their infringement of the Asserted Patents and to cease their ongoing and continuous infringement of the Asserted Patents.

2.      NES is a Colorado-based natural product extraction and distillation technologies company founded by Inventor C. Russell Thomas in 2012.

3.      Mr. Thomas founded NES to develop safe, non-addictive, all-natural alternatives

1

to prescription opiates based upon the promising potential of cannabinoids to treat pain, inflammation, and related conditions.

4.     As of 2012, eighteen U.S. states had legalized medical cannabis, but orally-consumable medicinal cannabis products were typically prepared by extracting cannabinoids from cannabis with fuel-grade butane.

5.     Mr. Thomas was concerned about the potentially carcinogenic nature of butane extracts. He performed initial research on rosemary distillates to develop clean and safe alternatives to butane extracts by inventing methods to (i) evaporate aromatic molecules from plant material, (ii) physically separate the evaporated aromatic molecules from the plant material, and (iii) recondense the aromatic molecules into a distillate.

6.     The Farm Bill of 2018 legalized consumer products containing cannabidiol ("CBD") derived from industrial hemp containing less than 0.3% tetrahydrocannabinol ("THC"). Mr. Thomas recognized that products made from hemp oils could be safe, non-addictive, all-natural alternatives to prescription opiates for treating pain.

7.     Mr. Thomas adapted his research on rosemary to distill hemp oils and to manufacture wholesale and retail products from the distillates to treat pain and inflammation.

8.     NES filed U.S. Provisional Patent Application No. 62/717,235 ("the '235 application") on August 10, 2018, which discloses methods to distill and activate hemp oils in a single process step. Each of the Asserted Patents claims priority to the '235 application.

9.     Each of the Asserted Patents discloses methods to distill and activate cannabinoids in a single process step including the activation of cannabidiolic acid ("CBDA") into CBD and the activation of tetrahydrocannabinolic acid ("THCA") into THC.

10.     Upon practicing the methods disclosed in the Asserted Patents, NES received

consumer feedback that its resultant hemp oils displayed superior efficacy at treating pain, inflammation, and other conditions relative to competing cannabinoid products. NES subsequently became the world's leading manufacturer of certified USDA organic hemp extract by volume sold.

11.     Trulieve Cannabis is a corporation publicly traded on the Canadian Securities Exchange and the largest cannabis retailer in the United States, with active operations in Arizona, California, Connecticut, Florida, Georgia, Maryland, Ohio, Pennsylvania and West Virginia. Ex. Q at 3. As of December 31, 2024, Trulieve Cannabis operated 225 dispensaries and 15 cultivation and processing facilities including at least 160 dispensaries and 5 cultivation and processing facilities in the State of Florida. Ex. Q at 3; Ex. G.

12.     Trulieve US is a wholly owned subsidiary and alter ego of Trulieve Cannabis, which conducts substantially all of its business through Trulieve US. Ex. Q at 6, 24.

13.     Defendants generate over a billion dollars in annual revenue selling cannabis products including products made with cannabis distillate. *Id.* at 39.

14.     NES derives revenue by licensing its intellectual property.

15.     Defendants do not license any intellectual property owned by NES.

16.     Defendants' success in the cannabis market comes at the expense of NES and its intellectual property rights.

17.     Defendants use processes that fall within the scope of various claims of each of the Asserted Patents.

18.     Defendants incorporate cannabis distillate made by processes that infringe various claims of the Asserted Patents into cannabis products such as vaporizers and edibles that Defendants market and sell to consumers in Florida and throughout the United States.

19.     The sale of products made with cannabis distillate generates hundreds of millions

of dollars in annual revenue for Defendants without any compensation to NES for the use of its intellectual property.

20.     NES brings this lawsuit seeking compensation that it is rightfully owed for the unauthorized use of its patented technology by Defendants and an injunction that enjoins Defendants from further unauthorized use of the patented technology.

## THE PARTIES

21.     Plaintiff NES is a limited liability company organized and existing under the laws of the State of Colorado, having a principal place of business in Boulder, Colorado.

22.     Defendant Trulieve US is a corporation organized and existing under the laws of the State of Florida, with its principal business address at 3494 Martin Hurst Road, Tallahassee, Florida 32312. Ex. F.

23.     Trulieve US possesses a Medical Marijuana Treatment Center ("MMTC") license that allows it to make and sell products derived from marijuana in Florida and to operate dispensaries that sell products derived from marijuana in Florida. Ex. Q at Exhibit 99.1.

24.     Under that MMTC license, Trulieve US directly operates one of the largest vertically-integrated, medical-use cannabis operations in Florida with approximately 160 dispensaries and five cultivation and processing facilities across the state. *Id*. at 3.

25.     Defendant Trulieve Cannabis is a corporation existing under the laws of the Province of British Columbia, Canada, with its principal place of business and principle executive offices in Florida, at 6749 Ben Bostic Road, Quincy, Florida 32351. *Id*. at 1, 6.

26.     Defendant Trulieve US is a wholly owned subsidiary of Defendant Trulieve Cannabis. *Id*.

27.     Defendant Trulieve Cannabis is a holding company that develops, produces, offers

for sale, and sells cannabis products either directly or through subsidiaries including Trulieve US in the State of Florida and in the Southern District of Florida. *Id*. at 24.

## JURISDICTION AND VENUE

28.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-27 as though fully set forth herein.

29.     This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

30.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

31.     This Court has personal jurisdiction over Defendants because they are incorporated or formed in Florida or have their principal places of business in Florida such that Defendants are "at home" in Florida having sought the protection and benefits of the laws of Florida and having purposefully availed themselves of the privileges of conducting business in Florida.

32.     Trulieve US also maintains several physical, permanent, regular, and established places of business in Florida, at which it has numerous employees and where it cultivates marijuana, makes cannabis distillate from marijuana, makes retail products from the cannabis distillate, and sells products at retail at over 160 Trulieve-branded dispensaries in Florida including more than three dozen dispensaries located in this District.

33.     In addition to having its principal place of business in Florida, Trulieve Cannabis maintains sufficient minimum contacts with the forum as a result of business conducted within the State of Florida through the sale of its cannabis products at the dispensaries operated by Trulieve US under the direction and control of Trulieve Cannabis so as to bring the exercise of jurisdiction over Trulieve Cannabis within Florida's long-arm statute and to comport with due process.

34.     This Court also has personal jurisdiction over both Defendants because each—either directly or through their relationship with each other—practices methods that infringe claims of the Asserted Patents and makes, uses, offers for sale, sells, advertises, makes available, instructs others to use, and/or markets products made by infringing methods in Florida and in this District. Thus, Defendants committed "torts" in Florida and in this District as defined in Fla. Stat. § 48.193, to wit: acts of infringement of claims of the Asserted Patents.

35.     Venue is proper in this District under 28 U.S.C. § 1400 as to Trulieve US because Trulieve US (1) maintains numerous physical, regular, and established places of business in this District at which it offers for sale, sells, advertises, makes available, instructs others to use, and/or markets products made by infringing methods, and (2) committed acts of direct infringement in this District by practicing processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and/or by selling products in this District made by processes that infringe claims of the Asserted Patents under 35 U.S.C. § 271(g).

36.     Trulieve US has a registered agent for service of process in Florida at 1201 Hays Street, Tallahassee, Florida 32301.

37.     Trulieve US operates one of the largest vertically-integrated medical-use cannabis operations in Florida with 160 dispensaries and 5 cultivation and processing facilities across the state. Ex. Q at 3.

38.     Trulieve US operates a MMTC license in Florida that allows it to make and sell products derived from marijuana in Florida.

39.     Trulieve US maintains at least 36 physical, permanent, regular, and established places of business in this District, including the dispensaries located at 1621 US HWY 1 Sebastian, FL 32958; 1814 Commerce Avenue, Vero Beach, FL 32960; 1495 S US Hwy 1, Fort Pierce, FL

34950; 1288 SW Gatlin Blvd, Port St. Lucie, FL 34953; 1068 SE Port St Lucie Blvd., Port St. Lucie, FL 34952; 1300 N Parrott Ave, Okeechobee, FL 34972; 1970 NW Federal HWY, Stuart, FL 34994; 6600 S Kanner Hwy, Stuart, FL 34997; 10835 SE Federal Hwy, Hobe Sound, FL 33455; 11859 US Hwy 1, North Palm Beach, FL 33408; 3555 Northlake Blvd, Palm Beach Gardens, FL 33403; 1324 N Military Trl, West Palm Beach, FL 33409; 4139 Okeechobee Blvd, West Palm Beach, FL 33409; 8724 Lake Worth Rd, Lake Worth, FL 33467; 4660 Hypoluxo Rd, Lake Worth, FL 33463; 330 Winchester Park Blvd, Boynton Beach, FL 33436; 1534 SW 8th Street, Boynton Beach, FL 33426; 15140 Jog Rd, Delray Beach, FL 33446; 23233 FL-7, Boca Raton, FL 33428; 458 W Hillsboro Blvd, Deerfield Beach, FL 33441; 10404 W Atlantic Blvd, Coral Springs, FL 33071; 5900 Rock Island Rd, Tamarac, FL 33319; 1417 SW 40th Terrace, Ft. Lauderdale, FL 33317; 520 Stirling Rd, Dania Beach, FL 33004; 1121 S Federal Hwy, Dania Beach, FL 33004; 2908 Hollywood Blvd, Hollywood, FL 33020; 2100 E Hallandale Beach Blvd #103, Hallandale Beach, FL 33009; 18350 NW 47th Ave, Miami Gardens, FL 33055; 175 NW 167th St, Miami, FL 33169; 15100 Biscayne Blvd, North Miami Beach, FL 33160; 4020 Northwest 26th Street, Miami, FL 33142; 1011 5th Street, Miami Beach, FL 33139; 9578 Bird Road, Olympia Heights, FL 33165; 9600 SW 77th Avenue, Miami, FL 33156; 19300 S Dixie Highway, Cutler Bay, FL 33157; 91216 Overseas Hwy, Tavernier, FL 33070; and 400 Duval Street, Unit C, Key West, FL 33040.

40.     On information and belief, Trulieve US manufactures products containing cannabis distillate by practicing processes that infringe claims of the Asserted Patents in Florida.

41.     Trulieve US makes, uses, markets, offers for sale, sells, and/or distributes cannabis products that contain cannabis distillate made by processes that infringe claims of the Asserted Patents at its dispensaries located throughout Florida and in this District. Thus, Trulieve US committed infringing acts in Florida and in this District.

42.     Trulieve US is a subsidiary and alter ego of Trulieve Cannabis.

43.     Trulieve Cannabis is "[h]eadquartered in Quincy, Florida," employs employees in Florida, and enters into various contractual agreements in Florida involving property held in Florida and services performed in Florida, which agreements are enforceable under Florida law and limited to dispute resolution in Florida forums. Ex. E, Ex. Q.

44.     On information and belief, Trulieve Cannabis' Executive Employment Agreement with its President, signed on February 25, 2025, is governed by Florida law and provides for litigation or arbitration only in the State of Florida.

45.     Notwithstanding those facts, it does not appear that Trulieve Cannabis ever applied or was approved to transact business in Florida, and, on information and belief, Trulieve Cannabis is not registered to transact business in Florida. Trulieve Cannabis thus relies primarily upon its subsidiary Trulieve US to meet the requirements imposed upon it by Florida law and to avail itself of the privileges of Florida law.

46.     Trulieve Cannabis stated on the Form 10-K Annual Report for the fiscal year ended December 31, 2024 (hereinafter "2024 10-K") that it filed with the United States Securities and Exchange Commission ("SEC"), "Trulieve Cannabis Corp. is a holding company and essentially all of its assets are the capital stock of its subsidiaries. We currently conduct substantially all of our business through Trulieve US, which currently generates substantially all of our revenues. Consequently, our cash flows and ability to complete current or desirable future growth opportunities are dependent on the earnings of Trulieve US and our other subsidiaries and the distribution of those earnings to Trulieve Cannabis Corp," and "Trulieve operates its business through its owned subsidiaries which hold licenses in the states in which they operate." Ex. Q at 24, 37.

47.     This Court also has personal jurisdiction over Trulieve Cannabis because Trulieve Cannabis maintains systematic and continuous contacts with Florida, it purposefully availed itself of the privileges of conducting business in Florida, and it sought the protection and benefits of the laws of Florida, including the Florida courts, and thus, Trulieve Cannabis in all respects subjected itself to the jurisdiction of Florida courts.

48.     Venue is proper in the Southern District of Florida under 28 U.S.C. § 1400 as to Trulieve Cannabis because Trulieve Cannabis (1) maintains at least one physical, regular, and established place of business in this District through its subsidiary and alter ego Trulieve US, which operates under the direction and control of Trulieve Cannabis, and (2) committed acts of direct and/or induced infringement in this District by practicing or inducing the practice of processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and (b) and/or by selling or inducing the sale of products made by processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(g).

49.     Defendants share common ownership as Trulieve Cannabis owns 100% of Trulieve US. *Id.* at 6.

50.     Defendants share common directors, officers, and employees including but not limited to Kimberly Rivers, Director/President, and Eric Powers, Director/Secretary/Treasurer. *See id.* at 6, Ex. F.

51.     Trulieve Cannabis has repeatedly ratified the established places of business of Trulieve US in Florida and in this District as its own places of business.

52.     Trulieve Cannabis stated on the 2024 10-K that it filed with the SEC, "we are the largest cannabis retailer in the United States with market leading retail operations in Arizona, Florida, Georgia, Pennsylvania, and West Virginia." Ex. Q at 3.

53.     On information and belief, Trulieve Cannabis maintains total control over and directs the actions, sales, and services of Trulieve US and consented to Trulieve US acting on behalf of Trulieve Cannabis in selling, offering to sell, and/or distributing products, including products that infringe claims of the Asserted Patents, in Florida and in this District.

54.     Trulieve Cannabis stated on the 2024 10-K that it filed with the SEC, "Trulieve operates its business through its directly and indirectly owned subsidiaries which hold licenses and have entered into managed service agreements in the states in which they operate," and, "Trulieve's production, retail, and distribution areas are organized into regional hubs whereby teams and assets are aggregated in order to effectively pair national structure and support with localized operations tailored to each market. . . . Each of our three regional hubs are anchored by market leading positions in [the] cornerstone states of Florida, Pennsylvania, and Arizona." *Id*.

55.     Trulieve Cannabis stated on the 2024 10-K that it filed with the SEC, with no distinction between Trulieve Cannabis and Trulieve US, "In Florida and Georgia, Trulieve cultivates, processes, and manufactures all cannabis products sold in our dispensaries . . . , which mitigates third-party risks and allows us to completely control product quality and brand experience. Trulieve employs an in-house quality team as well as testing laboratories in select markets, both of which allow us to more tightly control product quality." *Id*. at 4.

56.     Trulieve Cannabis stated on the 2024 10-K that it filed with the SEC, "[t]he Company is classified as having 'direct' involvement in the United States cannabis industry," and, "[w]e use reasonable commercial efforts to ensure that our business remains compliant with applicable licensing requirements and the regulatory frameworks enacted by Arizona, Colorado, Connecticut, Florida, Georgia, Maryland, Ohio, Pennsylvania, and West Virginia through the advice of our Company's legal counsel and through ongoing review of business practices and

changes to applicable laws and regulations." *Id*. at 10.

57.     Defendants present themselves as a single entity—"Trulieve"—that offers consistent products and consistent marketing on their website, Trulieve.com, and at their Trulieve-branded dispensaries that they operate throughout the United States.

58.     Trulieve US owns the "TRULIEVE" trademarks including U.S. Trademark Nos. 7,171,230; 6,312,449; and 6,338,638.  Ex. H, Ex. I, Ex. J.

59.     Trulieve US owns the "TRULIEVE" trademark for use with batteries for oral vaporizers (*e.g.*, U.S. Trademark No. 7,171,230) and for use with the retail sale of medical cannabis products (*e.g.*, Florida Trademark No. T20000000721). The specimen that Trulieve US filed to obtain U.S. Trademark No. 7,171,230 is a screenshot of the Trulieve.com website that depicts a product sold at a dispensary in Miami, Florida in this District. The specimen that Trulieve US provided to obtain U.S. Trademark No. 7,171,231 is a screenshot of the Trulieve.com website, which states, "[y]our shopping dispensary: Miami South Beach, FL," which is a dispensary located in Miami Beach, Florida in this District. The specimens provided to the Florida Division of Corporations to obtain Florida Trademark No. T20000000721 include (1) screenshots of the Trulieve.com website featuring orders for pickup at dispensaries located in Stuart, Florida and West Palm Beach, Florida in this District, (2) a photograph of a dispensary storefront located in Stuart, Florida in this District, and (3) a screenshot of the Trulieve.com website featuring the telephone number, address, and business hours of a dispensary located in Boynton Beach in this District. On information and belief, the dispensaries located in Miami, Miami South Beach, Stuart, West Palm Beach, and Boynton Beach in this District sell products manufactured by methods that infringe claims of the Asserted Patents. The Trulieve.com website markets products sold in these five dispensaries and the 31 other dispensaries that Trulieve US operates in this District to

consumers in this District including, on information and believe, products manufactured in Florida according to methods that infringe claims of the Asserted Patents.

60.     The 2024 10-K that Trulieve Cannabis filed with the SEC states that its intangible assets include trademarks valued at about $27 million, which, on information and belief, include the trademarks described in the preceding paragraph that Trulieve US owns.

61.     On information and belief, Trulieve Cannabis requires Trulieve US to feature and use "Trulieve" branding, trademarks, and trade dress in advertisements and marketing materials, on the Trulieve.com website, on various products that Trulieve US manufactures, and at the brick-and-mortar locations that Trulieve US operates in this District.

62.     The 2024 10-K that Trulieve Cannabis filed with the SEC states, "[d]istribution of branded products through our branded retail locations is a core driver of our long-term strategy. We have developed and acquired a curated portfolio of our own branded retail products that we cultivate, manufacture and distribute in over 200 Trulieve retail locations. By providing customers with consistent high-quality products and outstanding experiences, we aim to garner a large and loyal customer base across our distribution network. Trulieve brands include premium tier brands Avenue, Cultivar Collection, and Muse; mid-tier brands Modern Flower, Alchemy, Momenta, and SweetTalk, and value tier brands Co2lors, Loveli, Roll One, and Trekkers." Ex. Q at 4. The 2024 10-K that Trulieve Cannabis filed with the SEC also states, "[o]ur goal is to foster brand loyalty by providing customers with industry-leading branded products and superior service in an appealing, approachable setting. We accomplish this by creating and reinforcing positive customer experiences. Customer feedback informs our approach across all aspects of the customer journey including products, service, and messaging. We track various metrics including overall satisfaction, net promoter, and customer effort scores. We employ and continuously refine

numerous training programs to provide our associates with the resources they need to deliver outstanding customer experiences across the entire Trulieve platform. We offer specialized management training and incentives to reward positive outcomes so there is continuous reinforcement of customer experience best practices." *Id.*

63.     On information and belief, Defendants developed design standards, standard operating procedures, and training protocols that they employ throughout the country to provide replicable operations and consistent quality products for sale to consumers through Defendants' retail dispensaries throughout the country. Ex. Z.

64.     The 2024 10-K that Trulieve Cannabis filed with the SEC states, "Trulieve produces high quality cannabis flower and uses a variety of processes to transform biomass into products sold through our retail and wholesale distribution network. With a focus on replicable, scalable operations, we have developed design standards and training protocols that are employed across cultivation sites to achieve a high level of consistency and quality." Ex. Q at 4.

65.     The 2024 10-K also states, "[w]e have made significant investments in developing and deploying technology and data platforms designed to support scaled operations and growth in customers served and units sold. Through our customer data platform, we can analyze data to discern customer preferences, patterns, and trends which inform our product mix and allocation, promotional strategies, and outreach. Investments in our enterprise-grade platforms enable greater sophistication across production, retail, and wholesale operations and numerous support functions including accounting and finance, human resources, legal and compliance. We believe infrastructure and data capabilities are prerequisites for long term success in an increasingly competitive and integrated commerce environment." *Id.* at 5.

66.     On information and belief, Defendants offer employment to employees throughout

the United States including in Florida and in this District. On information and belief, Defendants also control the recruiting, hiring, training, and compensation of employees throughout the United States including in Florida and in this District.

67.    The 2024 10-K that Trulieve Cannabis filed with the SEC states, "[a]s of December 31, 2024, we had over 6,000 employees. We are committed to hiring talented individuals and maximizing individual potential, while fostering growth and career advancement. Since the opening of our first store in 2016, our workforce has grown with the company's expansion, adding personnel to our cultivation, production, transportation and retail divisions, along with our executive and support services teams. The workforce is evaluated and optimized on an ongoing basis, ensuring teams are sized and structured appropriately, and that we have the right people in each position. Our goal is to be the employer of choice in the cannabis industry; accordingly we use the highest standards in attracting the best talent, offer competitive compensation, and implement best practices in evaluating, recruiting, onboarding, and developing our human capital." *Id*. at 14.

68.    On information and belief, Trulieve US operates the website Trulieve.com on behalf of both Trulieve US and Trulieve Cannabis. Ex. K.

69.    The Trulieve.com website hosts documents that Trulieve Cannabis filed with the SEC including the 2024 10-K, for example, and the Trulieve.com website hosts a webpage entitled "Executive Leadership," which provides information about the officers of Trulieve Cannabis.

70.    The Trulieve.com website allows consumers to order products at dispensaries that Trulieve US operates throughout the United States, including at the 36 dispensaries that Trulieve US operates in this District.

71.    On information and belief, the Trulieve.com website allows consumers to order

products manufactured by Trulieve US in Florida using methods that infringe claims of the Asserted Patents for pick up at the 36 dispensaries that Trulieve US operates in this District.

72.     Trulieve Cannabis prepares and files consolidated financial statements such as those included in the 2024 10-K, which include the financial positions and operations of Trulieve Cannabis along with each of its subsidiaries including Trulieve US.

73.     The 2024 10-K that Trulieve Cannabis filed with the SEC states, "[t]he accompanying consolidated financial statements for the years ended December 31, 2024, 2023, and 2022 include the financial position and operations of Trulieve Cannabis Corp. and its subsidiaries. The consolidated financial statements were prepared in accordance with GAAP and include the assets, liabilities, revenue, and expenses of all consolidated subsidiaries and variable interest entities for which the Company has determined it is the primary beneficiary. Outside shareholders' interests in subsidiaries are shown on the consolidated financial statements as non-controlling interests. Intercompany balances and transactions are eliminated in consolidation." Ex. Q at 62.

74.     On information and belief, Defendants lease and/or own real property in Florida and/or this District where they make products using methods that infringe claims of the Asserted Patents and where they sell such products.

75.     The 2024 10-K that Trulieve Cannabis filed with the SEC states, "[t]he Company enters into leases in the normal course of business, primarily for retail space, production facilities, corporate offices, and equipment used in the production and sale of its products." *Id*. at 66.

76.     The 2024 10-K also states, "[t]he Company has entered into certain agreements in several states with various entities related to the purchase and operation of cannabis dispensary, cultivation, and production licenses, and has determined these to be variable interest entities for

which it is the primary beneficiary and/or holds a controlling voting equity position. The Company holds an ownership interest in these entities ranging from 0% to 95% either directly or through a proxy as of December 31, 2024." *Id*. at 90.

77.     The 2024 10-K also states, "[t]he Company consolidates these entities due to the other holder's equity investment being insufficient to finance its activities without additional subordinated financial support and the Company meeting the power and economics criteria. In particular, the Company controls the management decisions and activities most significant to certain VIEs [variable interest entities], has provided a significant portion of the subordinated financial support provided to date, and holds membership interests exposing the Company to the risk of reward and/or loss. The Company allocates income and cash flows of the VIEs based on the outstanding ownership percentage in accordance with the underlying operating agreements, as amended. The Company has consolidated all identified variable interest entities for which the Company is the primary beneficiary in the accompanying consolidated financial statements." *Id*. at 91.

78.     Trulieve specifically targets and advertises to consumers in Florida including in this District to market and sell products made by methods that, on information and belief, infringe claims of the Asserted Patents.

79.     On information and belief, Trulieve Cannabis owns the Florida limited liability company Trulieve Centaury Way, LLC.

80.     On information and belief, the chief legal officer of Trulieve Cannabis executed a loan agreement on behalf of Trulieve Centaury Way, LLC in the amount of $25 million. The loan agreement states that the loaned amount is secured by real property that Trulieve Centaury Way, LLC owns in Florida and leases to Trulieve US.

81.     On information and belief, Trulieve Cannabis and Trulieve US each executed a guaranty and suretyship agreement that guarantees certain obligations set forth in the loan agreement.

82.     On information and belief, Trulieve Cannabis directs that proceeds of the loan be used for the benefit of Trulieve US.

83.     On information and belief, the chief legal officer of Trulieve Cannabis executed one or more notice(s) of commencement on behalf of Trulieve Centaury Way, LLC to improve the property that secures the loaned amount for the benefit of lessee Trulieve US.

84.     On information and belief, Trulieve US practices methods that infringe claims of the Asserted Patents at the property that secures the loaned amount to produce products that Trulieve US then sells to consumers at the 36 dispensaries that Trulieve US operates in this District.

85.     On information and belief, Trulieve Cannabis owns the Florida limited liability company Trulieve Capps Highway LLC.

86.     On information and belief, the chief legal officer of Trulieve Cannabis executed a loan agreement on behalf of Trulieve Capps Highway LLC in the amount of $71.5 million. The loan agreement states that the loaned amount is secured by real property that Trulieve Capps Highway LLC owns in Florida and leases to Trulieve US.

87.     On information and belief, Trulieve Cannabis and Trulieve US each executed a guaranty and suretyship agreement that guarantees certain obligations set forth in the loan agreement.

88.      On information and belief, Trulieve Cannabis directs that proceeds of the loan be used for the benefit of Trulieve US.

89.    On information and belief, the chief legal officer of Trulieve Cannabis executed one or more notice(s) of commencement on behalf of Trulieve Capps Highway LLC to improve the property that secures the loaned amount for the benefit of lessee Trulieve US.

90.    On information and belief, Trulieve US practices methods that infringe claims of the Asserted Patents at the property that secures the loaned amount to produce products that Trulieve US then sells to consumers at the 36 dispensaries that Trulieve US operates in this District.

91.    On information and belief, Trulieve Cannabis executed an executive employment agreement, effective as of February 26, 2025, with the President of Trulieve Cannabis. On information and belief, the agreement states, "[t]his Agreement shall be governed by the laws of the State of Florida," contains a clause that requires for "any dispute, controversy, or claim arising out of or related to this Agreement" to be submitted to arbitration in Florida, and otherwise subjects the parties "to the exclusive jurisdiction and venue of the state and federal courts in Leon County, Florida."

92.    On information and belief, the president of Trulieve Cannabis and other officers of Trulieve Cannabis work primarily from offices located in Florida.

93.    The 2024 10-K that Trulieve Cannabis filed with the SEC states, "[t]he Company's corporate headquarters is located in Quincy, Florida," and, "[t]he head office is located at 6749 Ben Bostic Road, Quincy, Florida, 32351." Ex. Q at 6, 32.

## THE ASSERTED PATENTS

94.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-93 as though fully set forth herein.

95.    The '248 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly

18

and legally issued by the United States Patent and Trademark Office ("USPTO") on June 2, 2020, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '248 patent is attached as Exhibit A.

96.     The '248 patent is valid and enforceable.

97.      Messrs. Thomas and DePalo assigned their inventions as disclosed in the '248 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '248 patent with the sole right to enforce the '248 patent and sue for infringement.

98.      The '402 patent, entitled "Gas Phase Methods to Decarboxylate Cannabinoids," was duly and legally issued by the USPTO on May 9, 2023, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '402 patent is attached as Exhibit B.

99.     The '402 patent is valid and enforceable.

100.     Messrs. Thomas and DePalo assigned their inventions as disclosed in the '402 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '402 patent with the sole right to enforce the '402 patent and sue for infringement.

101.     The '181 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly and legally issued by the USPTO on May 13, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '181 patent is attached as Exhibit C.

102.     The '181 patent is valid and enforceable.

103.     Messrs. Thomas and DePalo assigned their inventions as disclosed in the '181 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '181 patent with the sole right to enforce the '181 patent and sue for infringement.

104.     The '214 patent, entitled "Methods to Produce Products Comprising

Cannabinoids," was duly and legally issued by the USPTO on September 23, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '214 patent is attached as Exhibit D.

105.    The '214 patent is valid and enforceable.

106.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '214 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '214 patent with the sole right to enforce the '214 patent and sue for infringement.

**FACTUAL BACKGROUND & DEFENDANTS' INFRINGEMENT**

**A.  The '248 Patent**

107.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-106 as though fully set forth herein.

108.    Claim 1 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate, in which at least 95% of the native cannabinoid molecule is converted into the condensed cannabinoid molecule per mole; and

collecting the liquid distillate.

109.    Claim 2 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate, in which the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio greater than 100:1.

110.    Claim 8 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

111.    Claim 12 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the composition has a surface-area-to-volume ratio greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

112.    On information and belief, Defendants make cannabis distillate using methods that satisfy each and every limitation of at least claims 1, 2, 8, and 12 of the '248 patent either literally or under the doctrine of equivalents.

113.    Cannabis flowers contain a variety of naturally occurring molecules called cannabinoids. CBDA is a native cannabinoid molecule found naturally in various strains of the cannabis plant. THCA is another native cannabinoid molecule found naturally in various strains of the cannabis plant.

114.    Defendants extract cannabis oil from cannabis plants. *See, e.g.*, Ex. Q at 4. The resultant cannabis extracts contain the native cannabinoid molecules CBDA and/or THCA.

115.    CBDA lacks robust medicinal effects. CBDA may be converted into CBD by a chemical process called decarboxylation.

116.    THCA lacks robust psychoactive effects. THCA may be converted into the psychoactive molecule THC by decarboxylation. THC and its active metabolite 11-hydroxy-Δ9-tetrahydrocannabinol display psychoactive effects.

117.    CBDA and THCA each comprise a carboxyl group.

118.     Decarboxylation removes the carboxyl group from the CBDA molecule to form a CBD molecule and a carbon dioxide molecule.

119.     Decarboxylation removes the carboxyl group from the THCA molecule to form a THC molecule and a carbon dioxide molecule.

120.     Defendants make cannabis distillate with methods that modify the native cannabinoid molecule CBDA to form CBD and carbon dioxide and/or that modify the native cannabinoid molecule THCA to form THC and carbon dioxide.

121.     Cannabinol ("CBN") is a thermal oxidation product of THCA.

122.     CBN can cause drowsiness, paranoia, and confusion in humans.

123.     Decarboxylating THCA under certain conditions converts some of the THCA into CBN.

124.     On information and belief, Defendants make and sell products made with cannabis distillate containing greater than 80% THC by mass and less than 0.8% CBN by mass such as the "9LB Hammer - TruClear Distillate Syringe 1G," "Super Lemon Haze - TruClear Distillate Syringe 1G," "Sundae Driver - Vape Cart 1G," "Red Eye OG - Vape Cart 1G," "Chemdog - Vape Cart .5G," "Pumpkin Spice - Vape Cart 1G," "Presidential Kush - Vape Cart 1G," "Peach Cobbler - Vape Cart 1G," and "Hot Chocolate - Vape Cart 1G," which Defendants make and sell in Florida and throughout the United States including at 36 dispensaries that Trulieve US operates in this District. *See* Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U. The molar ratio of THC to CBN in such products is greater than 100:1.

125.     On information and belief, Defendants make and sell other products made with cannabis distillate containing greater than 80% THC by mass and less than 0.8% CBN by mass

such as CO2LORS-branded vape carts.

126.     On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise greater than 80% THC and less than 0.8% CBN.

127.     On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise a molar ratio of THC to CBN of greater than 100:1.

128.     The 2024 10-K that Trulieve Cannabis filed with the SEC states, "we employ distillation, purification, and manufacturing technologies to further refine extracts and transform them into a wide variety of finished products." Ex. Q at 4.

129.     On information and belief, Defendants distill cannabinoids by short-path distillation to make cannabis distillate in Florida. *See, e.g.*, Ex. V, Ex. Z.

130.     Wiped-film distillation is a type of short-path distillation. Ex. P, Ex. W.

131.     On information and belief, Trulieve US distills cannabinoids in Florida with one or more wiped-film distillation systems. *See, e.g.*, Ex. V, Ex. Z.

132.     On information and belief, an Operations & Production Planner employed by Trulieve US stated on his resume and in his LinkedIn profile that he performed wiped-film distillation for Trulieve US in Florida. Ex. V, Ex. Z.

133.     On information and belief, a Senior Research and Development Scientist at Trulieve US in Florida performs and/or directs the performance of wiped-film distillations for Trulieve US in Florida. *See* Ex. W, Ex. X.

134.     On information and belief, Trulieve US operates one or more wiped-film distillation systems manufactured by the German company Verfahrenstechnische Anlagen GmbH

& Co. KG ("VTA") and imported into the United States by Root Sciences LLC (Washington, United States). *See* Ex. O.

135.     On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule CBDA and/or the native cannabinoid molecule THCA.

136.     On information and belief, Defendants manufacture cannabis distillates using processes that lack a separate decarboxylation step, in which a cannabis extract is heated above 212° Fahrenheit to convert THCA into THC prior to distillation.

137.     The input to Defendants' wiped-film distillation system is a liquid.

138.     On information and belief, Defendants operate one or more wiped-film distillation systems by providing a composition that comprises liquid-phase CBDA and/or liquid-phase THCA.

139.     On information and belief, Defendants operate one or more wiped-film distillation systems by contacting compositions comprising cannabinoids with sufficient energy to evaporate cannabinoids (by heating cannabis extracts to an elevated temperature) such that the cannabinoids enter a gas phase as a vapor.

140.     On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule CBDA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule, *i.e.*, CBD, in a gas phase.

141.     On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule THCA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule, *i.e.*, THC, in a gas phase.

142.     On information and belief, Defendants operate their wiped-film distillation system(s) by condensing gas phase CBD into a liquid distillate by contacting the gas-phase CBD with a cold trap and/or by condensing gas phase THC into a liquid distillate by contacting the gas-phase THC with a cold trap. Ex. P, Ex. W.

143.     The cold traps in Defendants' wiped-film distillation systems are heat sinks.

144.     On information and belief, Defendants collect distillate from one or more wiped-film distillation systems, which Defendants use to make consumer products that contain the distillate.

145.     On information and belief, Defendants make and sell products that comprise cannabis distillate that contains THC and CBD and no detected THCA or CBDA, for example, "9LB Hammer - TruClear Distillate Syringe 1G," "Super Lemon Haze - TruClear Distillate Syringe 1G," "Sundae Driver - Vape Cart 1G," "Red Eye OG - Vape Cart 1G," "Chemdog - Vape Cart .5G," "Pumpkin Spice - Vape Cart 1G," "Presidential Kush - Vape Cart 1G," "Peach Cobbler - Vape Cart 1G," and "Hot Chocolate - Vape Cart 1G." *See* Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

146.     On information and belief, Defendants make and sell other products that comprise cannabis distillate that contains THC and CBD and no detected THCA or CBDA such as CO2LORS-branded vape carts.

147.     Thus, on information and belief, the distillation process used by Defendants to make the distillate contained in these products converts at least 95% of the native cannabinoid molecule CBDA of the provided composition comprising cannabinoids into CBD and/or at least 95% of the native cannabinoid molecule THCA of the provided composition comprising

cannabinoids into THC.

148.     On information and belief, Defendants make and sell products that contain distillate that comprises greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of greater than 100:1. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

149.     On information and belief, the wiped-film distillation system(s) that Defendants operate each comprise a mechanical wiper that spreads compositions comprising cannabinoids into a thin film across a heated surface. *See, e.g.*, Ex. P.

150.     On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface. *See, e.g.*, *id.*

151.     On information and belief, Defendants operate one or more wiped-film distillation systems by spreading compositions comprising cannabinoids into a thin film across the heated surface of each wiped-film distillation system. *See id.*

152.     On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

153.     A film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation systems operated by Defendants has a surface-area-to-volume ratio that is greater than both 1000 per meter and 500 per meter.

**B.    The '402 Patent**

154.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-153 as though fully set forth herein.

155.     Claim 1 of the '402 patent claims:

A   method   to   chemically-modify   a   cannabinoid   molecule, comprising:

providing a composition comprising cannabinoids wherein the composition has a surface-area-to-volume ratio that is greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in either a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

156.    Claim 8 of the '402 patent depends from Claim 1 and recites:

contacting the composition with the sufficient energy comprises conductively heating the composition.

157.    Claim 14 of the '402 patent depends from Claim 1 and recites:

the liquid distillate comprises one or both of cannabidiol and tetrahydrocannabinol at a combined concentration of greater than 6 percent by weight; and

the liquid distillate comprises cannabinol at a concentration of less than 0.8 percent by weight.

158.    Claim 15 of the '402 patent depends from Claim 1 and recites:

the liquid distillate comprises each of cannabidiol, tetrahydrocannabinol, and cannabigerol.

159.    Claim 18 of the '402 patent depends from Claim 1 and recites:

the native cannabinoid molecule is cannabigerolic acid;

the modified cannabinoid molecule is cannabigerol; and

the condensed cannabinoid molecule is cannabigerol.

160.    On information and belief, Defendants make cannabis distillate using methods that satisfy each and every limitation of at least claims 1, 8, 14, 15, and 18 of the '402 patent either

literally or under the doctrine of equivalents.

161.     On information and belief, Defendants perform wiped-film distillations on compositions comprising cannabinoids to make cannabis distillate. *See, e.g.*, Ex. V.

162.     On information and belief, the wiped-film distillation system(s) that Defendants operate each comprise a mechanical wiper that spreads compositions comprising cannabinoids into a thin film across a heated surface. *See, e.g.*, Ex. P.

163.     On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface.

164.     On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

165.     The film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation systems operated by Defendants has a surface-area-to-volume ratio that is greater than 1000 per meter.

166.     Defendants' wiped-film distillation systems transfer energy from heated surfaces to the thin films of liquid that are spread across the heated surfaces. *See, e.g.*, *id*.

167.     Transferring energy from a heated surface to a thin film of liquid that is spread across the heated surface is a form of conductive heating.

168.     Defendants' wiped-film distillation systems transfer energy by conductive heating.

169.     On information and belief, Defendants operate their wiped-film distillation systems to make liquid distillates that comprise CBD and/or THC at a combined concentration of greater than 6% by weight. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

170.     On information and belief, Defendants operate their wiped-film distillation systems

to make liquid distillates that comprise CBN at a concentration of less than 0.8% by weight. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

171.   On information and belief, Defendants make cannabis distillates that contain greater than 80% THC, greater than 2% cannabigerol ("CBG"), and less than 1% cannabichromene ("CBC"). *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

172.   On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to make cannabis distillates that contain greater than 80% THC, greater than 2% CBG, and less than 1% CBC.

173.   Cannabigerolic acid ("CBGA") is a native cannabinoid molecule found naturally in various strains of the cannabis plant.

174.   Defendants extract cannabis oil from cannabis plants. On information and belief, the resultant cannabis extracts contain the native cannabinoid molecule CBGA.

175.   CBGA comprises a carboxyl group.

176.   CBGA may be converted into CBG by a chemical process called decarboxylation. CBG displays psychoactive and medicinal properties.

177.   Decarboxylation removes the carboxyl group from the CBGA molecule to form a CBG molecule and a carbon dioxide molecule.

178.   Decarboxylating CBGA under certain conditions converts some of the CBGA into CBC.

179.   On information and belief, Defendants make cannabis distillate with processes that modify the native cannabinoid molecule CBGA to form CBG and carbon dioxide.

180.    On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule CBGA.

181.    On information and belief, Defendants perform wiped-film distillation on compositions comprising cannabinoids that include CBGA to make cannabis distillate.

182.    On information and belief, Defendants operate one or more wiped-film distillation systems by providing compositions that comprise liquid-phase CBGA.

183.    On information and belief, Defendants contact compositions comprising cannabinoids that include CBGA with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule CBGA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase, *i.e.*, CBG.

184.    On information and belief, Defendants condense gas phase CBG into a liquid distillate, which Defendants perform in wiped-film distillation systems by contacting the gas phase CBG with a cold trap. *See, e.g.*, Ex. P, Ex. W.

185.    On information and belief, Defendants make and sell products that comprise cannabis distillate that contains THC, CBD, and CBG, for example, "9LB Hammer - TruClear Distillate Syringe 1G," "Super Lemon Haze - TruClear Distillate Syringe 1G," "Sundae Driver - Vape Cart 1G," "Red Eye OG - Vape Cart 1G," "Chemdog - Vape Cart .5G," "Pumpkin Spice - Vape Cart 1G," "Presidential Kush - Vape Cart 1G," "Peach Cobbler - Vape Cart 1G," and "Hot Chocolate - Vape Cart 1G," which Defendants make and sell in Florida and throughout the United States including at 36 dispensaries that Trulieve US operates in this District. *See* Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

186.    On information and belief, Defendants make and sell other products that comprise

cannabis distillate that contains THC, CBD, and CBG such as CO2LORS-branded vape carts.

187.   On information and belief, Defendants operate their wiped-film distillation systems to make liquid distillates that comprise each of CBD, THC, and CBG. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

188.   On information and belief, Defendants make cannabis distillate using methods that satisfy all other elements of claims 1, 8, 14, 15, and 18 of the '402 patent for the reasons recited in Paragraph Nos. 113-153 above with respect to the '248 patent.

## C. The '181 Patent

189.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-188 as though fully set forth herein.

190.   Claim 1 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein:

the method comprises converting less than 2 percent of the native cannabinoid molecule into cannabinol by mole;

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the method is performed such that the liquid distillate comprises cannabinol at a concentration of less than 0.8 percent by weight.

191.   Claim 2 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein the method is performed such that:

the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

192.   Claim 3 of the '181 patent depends from Claim 2 and recites:

the native cannabinoid molecule is cannabidiolic acid;

the modified cannabinoid molecule is cannabidiol; and

the condensed cannabinoid molecule is cannabidiol.

193.    Claim 4 of the '181 patent depends from Claim 2 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol; and

the condensed cannabinoid molecule is tetrahydrocannabinol.

194.    Claim 9 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter, wherein the heated surface is a surface of a thin-film evaporator;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

195.    Claim 19 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1.

196.   Claim 21 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

197.   On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1-4, 9, 19, and 21 of the '181 patent either literally or under the doctrine of equivalents.

198.   Defendants extract cannabis oil from flowers of cannabis plants, which are plants of the genus *Cannabis*.

199.   On information and belief, Defendants provide extracted oils that were extracted from plant material of the genus *Cannabis*, which comprise cannabinoids, for distillation via wiped-film distillation systems.

200.   On information and belief, extracted oils that Defendants provide for distillation comprise THCA, and distillation of the extracted oils necessarily must convert less than 2% of the THCA into CBN by mole to arrive at compositions comprising greater than 80% THC and less than 0.8% CBN by mass.

201.   Delta-8-tetrahydrocannabinol ("Δ8-THC") is a thermal oxidation product of THC.

202.   On information and belief, Defendants make products from cannabis distillates that contain greater than 80% THC and less than 0.26% Δ8-THC by mass. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N,

Ex. R, Ex. S, Ex. T, Ex. U. Such distillates comprise THC and Δ8-THC at a molar ratio of greater than 300:1.

203.    On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise THC and Δ8-THC at a molar ratio of greater than 300:1.

204.    Defendants' wiped-film distillation system is a type of thin-film evaporator. *See, e.g.*, Ex. P.

205.    On information and belief, Defendants make cannabis distillate using methods that satisfy all other elements of claims 1-4, 9, 19, and 21 of the '181 patent for the reasons recited in Paragraph Nos. 113-153 above with respect to the '248 patent and in Paragraph Nos. 161-187 above with respect to the '402 patent.

**D. The '214 Patent**

206.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-205 as though fully set forth herein.

207.    Claim 1 of the '214 patent recites:

A method to produce a product comprising a cannabinoid, comprising:

(a) providing a composition comprising cannabinoids, wherein (i) the composition has a surface area, (ii) the composition comprises less than 15 percent water by weight, (iii) the composition comprises an oil, (iv) the oil comprises the cannabinoids, (v) the cannabinoids comprise a native cannabinoid molecule, (vi) the native cannabinoid molecule comprises a carboxyl group, (vii) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (viii) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (ix) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);

(b) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native

cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (x) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, and (xi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);

(c) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate, wherein (xii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and

(d) collecting the distillate.

208.     Claim 2 of the '214 patent depends from Claim 1 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), tetrahydrocannabivarin (THCV), cannabidiol (CBD), and cannabinol (CBN);

the condensed cannabinoids comprise tetrahydrocannabinol (THC) and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) by weight.

209.     Claim 4 of the '214 patent depends from Claim 1 and recites:

providing a vaporizer cartridge comprising a chamber and a heating element; and

filling the chamber of the vaporizer cartridge with at least a portion of the distillate to create thermal communication between the heating element and the portion of the distillate.

210.     Claim 5 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus Cannabis; and

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase.

211.    Claim 6 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus *Cannabis*;

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase; and

the distillate comprises cannabinol (CBN) at a concentration of less than 2 percent by weight.


212.    Claim 8 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus *Cannabis*;

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase;

the gas phase lacks sulfur dioxide at a concentration greater than 5 parts per million by volume;

the distillate comprises one or both of cannabidiol (CBD) and tetrahydrocannabinol (THC) at a combined concentration of greater than 60 percent by weight; and

the distillate comprises cannabinol (CBN) at a concentration of less than 0.5 percent by weight.

213.    Claim 11 of the '214 patent depends from Claim 1 and recites:

the distillate comprises one or both of cannabidiol (CBD) and tetrahydrocannabinol (THC) at a combined concentration of greater than 70 percent by weight; and

the distillate comprises cannabinol (CBN) at a concentration of less than 0.5 percent by weight.

214.    Claim 18 of the '214 patent recites:

A method to produce a product comprising a cannabinoid, comprising:

(a) providing a distillation apparatus, wherein (i) the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

(b) providing a composition comprising cannabinoids, wherein (ii) the composition has a surface area, (iii) the composition comprises less than 15 percent water by weight, (iv) the composition comprises an oil, (v) the oil comprises the cannabinoids, (vi) the oil is an extracted oil from the genus *Cannabis*, (vii) the cannabinoids comprise a native cannabinoid molecule, (viii) the native cannabinoid molecule comprises a carboxyl group, (ix) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (x) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (xi) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);

(c) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (xii) the heated surface is a surface of the distillation apparatus, (xiii) contacting the composition with the heated surface comprises coating the heated surface with the composition, (xiv) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, (xv) heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase, and (xvi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);

(d) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate less than 360 seconds after converting the native cannabinoid molecule into the modified cannabinoid molecule in the gas phase, wherein (xvii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and

(e) collecting the distillate.

215. Claim 19 of the '214 patent depends from Claim 18 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), cannabidiol (CBD), tetrahydrocannabivarin (THCV), and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) as a percentage by weight of the condensed cannabinoids.

216. Claim 20 of the '214 patent depends from Claim 18 and recites:

providing a vaporizer cartridge comprising a chamber and a heating element; and

filling the chamber of the vaporizer cartridge with at least a portion of the distillate to create thermal communication between the heating element and the portion of the distillate.

217. On information and belief, Defendants make cannabis distillate using methods that satisfy each and every limitation of at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent either literally or under the doctrine of equivalents.

218. Defendants make products comprising cannabinoids such as TruClear Distillate Syringes and Trulieve-branded vape carts according to methods by which Defendants introduce cannabis extracts (*i.e.*, compositions comprising cannabinoids) into wiped-film distillation systems.

219. The wiped-film distillation systems that Defendants operate are thin-film evaporators. *See, e.g.*, Ex. P.

220. The compositions comprising cannabinoids each have a surface area when introduced into Defendants' wiped-film distillation systems.

221. On information and belief, the compositions comprising cannabinoids that Defendants introduce into their wiped-film distillation systems comprise less than 15% water by

weight.

222.     The compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems are oils that Defendants extract from plants of the genus *Cannabis*. On information and belief, the oils comprise cannabinoids including the native cannabinoid molecule THCA, which comprises a carboxyl group.

223.     On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems must comprise at least 5% by weight of the cannabinoids THCA and THC to make distillates that comprise greater than 80% THC.

224.     On information and belief, the compositions comprising cannabinoids that Defendants introduce into their wiped-film distillation systems must comprise at least 1% by weight THCA to make distillates that comprise greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of at least 100:1.

225.     On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to make distillates that comprise greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of at least 100:1.

226.     Defendants operate each of their wiped-film distillation systems by contacting a cannabis extract with a heated surface of the distillation system and exposing the surface area of the cannabis extract to a vacuum to contact the cannabis extract with sufficient energy to convert the liquid-phase native cannabinoid molecule THCA into carbon dioxide and the gas-phase modified cannabinoid molecule THC. *See, e.g.*, Ex. P.

227.     On information and belief, the gas phase within each distillation system that Defendants operate consists predominantly of cannabinoids and carbon dioxide, and the gas phase lacks sulfur dioxide at a concentration greater than 5 parts per million by volume.

228.     On information and belief, Defendants operate wiped-film distillation systems by coating a heated surface of each distillation system with a thin film of cannabis extract, which is performed by one or more wipers of the wiped-film distillation system. *See, e.g.*, *id*.

229.     Defendants heat cannabinoids in their wiped-film distillation systems by conduction.

230.     Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC (*i.e.*, a condensed cannabinoid molecule) in a distillate and then collecting the distillate.

231.     On information and belief, Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC less than 360 seconds after converting liquid-phase THCA into gas-phase THC.

232.     On information and belief, distillates that Defendants collect from their wiped-film distillation systems comprise THC at a concentration of at least 80% by weight and CBN at a concentration of less than 0.5% CBN by weight. *See, e.g.*, Ex. AA, Ex. AB, Ex. AC, Ex. AD, Ex. AE, Ex. AF, Ex. AG, Ex. AH, Ex. AI, Ex. AJ, Ex. AK, Ex. L, Ex. M, Ex. N, Ex. R, Ex. S, Ex. T, Ex. U.

233.     On information and belief, Defendants provide vaporizer cartridges that each comprise a chamber and a heating element, and Defendants fill the chamber of each vaporizer cartridge with distillate that they collect from their wiped-film distillation systems to create thermal communication between the heating element of the vaporizer cartridge and the distillate. Defendants thereby manufacture, for example, Trulieve-branded Vape Carts. *See, e.g.*, Ex. AE, Ex. AG, Ex. AI, Ex. AK, Ex. M, Ex. R, Ex. T.

234.     On information and belief, Defendants make cannabis distillate using methods that

satisfy all other elements of claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent for the reasons recited in Paragraph Nos. 113-153 above with respect to the '248 patent and in Paragraph Nos. 161-187 with respect to the '402 patent and in Paragraph Nos. 198-204 above with respect to the '181 patent.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,669,248

235. Plaintiff repeats and realleges the allegations contained in Paragraph Nos. 1-234 as though fully set forth herein.

### A. Direct Infringement (35 U.S.C. §§ 271(a) and (g))

236. For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(a).

237. For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '248 patent without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(g).

238. On information and belief, Defendant Trulieve Cannabis has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, through its direct involvement in the infringing

activities of its subsidiaries and alter egos, including but not limited to its Florida subsidiary and alter ego Trulieve US. Trulieve US conducts activities that constitute direct infringement of the '248 patent under 35 U.S.C. § 271(a) and (g). Trulieve Cannabis is liable for the infringing acts of its subsidiaries and alter egos, including Trulieve US, under both alter ego and agency precedent, for example, because Trulieve Cannabis and its subsidiaries are essentially the same company, because Trulieve Cannabis has the right and ability to control its subsidiaries' infringing acts, and because Trulieve Cannabis receives a direct financial benefit from the infringing acts of its subsidiaries including Trulieve US.

239.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '248 patent.

**B.   Induced Infringement (35 U.S.C. § 271(b))**

240.    Defendants have had actual knowledge of both the '248 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

241.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis, including Trulieve US, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(a) and (g).

242.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Trulieve US, to perform processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent.

44

243.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Trulieve US, to sell products made by processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent in the United States.

244.    On information and belief, Trulieve Cannabis controls the manufacture and sale of products by its subsidiaries including Trulieve US in Florida.

245.    On information and belief, Trulieve US sells products in Florida, including in this District, that bear the names of the proprietary product brands of Trulieve Cannabis including, for example, CO2LORS-branded vape carts.

246.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis located in various states make and sell many of the same products in different states. *See, e.g.*, Ex. Q at 4.

247.    On information and belief, Trulieve Cannabis directs and instructs its subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Trulieve Cannabis dictates. *See, e.g.*, *id*. at Ex. 10.17, p.9.

248.    On information and belief, Trulieve Cannabis created, established, and enforces upon its subsidiaries and alter egos, including Trulieve US, standard operating procedures that infringe claims of the '248 patent. *See id*.

249.    Thus, on information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Trulieve US, to directly infringe at least claims 1, 2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(b).

250.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues

a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '248 patent.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 11,643,402**

251.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-250 as though fully set forth herein.

### A. Direct Infringement (35 U.S.C. §§ 271(a) and (g))

252.     For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(a).

253.     For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '402 patent without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(g).

254.     On information and belief, Defendant Trulieve Cannabis has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Florida subsidiary and alter ego Trulieve US. Trulieve US conducts activities that constitute direct

infringement of the '402 patent under 35 U.S.C. § 271(a) and (g). Trulieve Cannabis is liable for the infringing acts of its subsidiaries and alter egos including Trulieve US under both alter ego and agency precedent, for example, because Trulieve Cannabis and its subsidiaries are essentially the same company, because Trulieve Cannabis has the right and ability to control its subsidiaries' infringing acts, and because Trulieve Cannabis receives a direct financial benefit from the infringing acts of its subsidiaries including Trulieve US.

255.    NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '402 patent.

### B.  Induced Infringement (35 U.S.C. § 271(b))

256.    Defendants have had actual knowledge of both the '402 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

257.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis, including Trulieve US, perform processes to make cannabis distillate that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent under 35 U.S.C. § 271(a) and (g).

258.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Trulieve US, to perform processes that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent.

259.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its

subsidiaries and alter egos, including Trulieve US, to sell products made by processes that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent in the United States.

260.    On information and belief, Trulieve Cannabis controls the manufacture and sale of products by its subsidiaries including Trulieve US in Florida.

261.    On information and belief, Trulieve US sells products in Florida, including in this District, that bear the names of the proprietary product brands of Trulieve Cannabis including, for example, CO2LORS-branded vape carts.

262.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis located in various states make and sell many of the same products in different states. *See, e.g.*, *id.* at 4.

263.    On information and belief, Trulieve Cannabis directs and instructs its subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Trulieve Cannabis dictates. *See, e.g.*, *id.* at Ex. 10.17, p.9.

264.    On information and belief, Trulieve Cannabis created, established, and enforces upon its subsidiaries and alter egos, including Trulieve US, standard operating procedures that infringe the '402 patent. *See id*.

265.    Thus, on information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Trulieve US, to directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent under 35 U.S.C. § 271(b).

266.    NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and

representatives, and all others acting in active concert therewith from infringing the '402 patent.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 12,297,181**

267.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-266 as though fully set forth herein.

**A.   Direct Infringement (35 U.S.C. §§ 271(a) and (g))**

268.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(a).

269.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '181 patent without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(g).

270.    On information and belief, Defendant Trulieve Cannabis has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Florida subsidiary and alter ego Trulieve US. Trulieve US conducts activities that constitute direct infringement of the '181 patent under 35 U.S.C. § 271(a) and (g). Trulieve Cannabis is liable for

49

the infringing acts of its subsidiaries and alter egos including Trulieve US under both alter ego and agency precedent, for example, because Trulieve Cannabis and its subsidiaries are essentially the same company, because Trulieve Cannabis has the right and ability to control its subsidiaries' infringing acts, and because Trulieve Cannabis receives a direct financial benefit from the infringing acts of its subsidiaries including Trulieve US.

271.    NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '181 patent.

**B.   Induced Infringement (35 U.S.C. § 271(b))**

272.    Defendants have had actual knowledge both of the '181 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

273.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis, including Trulieve US, perform processes to make cannabis distillate that directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(a) and (g).

274.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Trulieve US, to perform processes that directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent.

275.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Trulieve US, to sell products made by processes that directly

infringe at least claims 1-4, 9, 19, and 21 of the '181 patent in the United States.

276.   On information and belief, Trulieve Cannabis controls the manufacture and sale of products by its subsidiaries including Trulieve US in Florida.

277.   On information and belief, Trulieve US sells products in Florida, including in this District, that bear the names of the proprietary product brands of Trulieve Cannabis including, for example, CO2LORS-branded vape carts.

278.   On information and belief, subsidiaries and alter egos of Trulieve Cannabis located in various states make and sell many of the same products in different states. *See, e.g.*, *id.* at 4.

279.   On information and belief, Trulieve Cannabis directs and instructs its subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Trulieve Cannabis dictates. *See, e.g.*, *id*. at Ex. 10.17, p.9.

280.   On information and belief, Trulieve Cannabis created, established, and enforces upon its subsidiaries and alter egos, including Trulieve US, standard operating procedures that infringe the '181 patent. *See id*.

281.   Thus, on information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Trulieve US, to directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(b).

282.   NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '181 patent.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 12,420,214

283.     Plaintiff repeats and realleges the allegations contained in Paragraph Nos. 1-282 as though fully set forth herein.

### A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))

284.     For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(a).

285.     For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '214 patent without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(g).

286.     On information and belief, Defendant Trulieve Cannabis has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Florida subsidiary and alter ego Trulieve US. Trulieve US conducts activities that constitute direct infringement of the '214 patent under 35 U.S.C. § 271(a) and (g). Trulieve Cannabis is liable for the infringing acts of its subsidiaries and alter egos including Trulieve US under both alter ego

and agency precedent, for example, because Trulieve Cannabis and its subsidiaries are essentially the same company, because Trulieve Cannabis has the right and ability to control its subsidiaries' infringing acts, and because Trulieve Cannabis receives a direct financial benefit from the infringing acts of its subsidiaries including Trulieve US.

287.    NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '214 patent.

**B. Induced Infringement (35 U.S.C. § 271(b))**

288.    Defendants have had actual knowledge both of the '214 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

289.    On information and belief, subsidiaries and alter egos of Trulieve Cannabis, including Trulieve US, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent under 35 U.S.C. § 271(a) and (g).

290.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Trulieve US, to perform processes that directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent.

291.    On information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Trulieve US, to sell products made by processes that directly

infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent in the United States.

292.   On information and belief, Trulieve Cannabis controls the manufacture and sale of products by its subsidiaries including Trulieve US in Florida.

293.   On information and belief, Trulieve US sells products in Florida, including in this District, that bear the names of the proprietary product brands of Trulieve Cannabis including, for example, CO2LORS-branded vape carts.

294.   On information and belief, subsidiaries and alter egos of Trulieve Cannabis located in various states make and sell many of the same products in different states. *See*, *e.g.*, *id*. at 4.

295.   On information and belief, Trulieve Cannabis directs and instructs its subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Trulieve Cannabis dictates. *See, e.g.*, *id*. at Ex. 10.17, p.9.

296.   On information and belief, Trulieve Cannabis created, established, and enforces upon its subsidiaries and alter egos, including Trulieve US, standard operating procedures that infringe the '214 patent. *See id*.

297.   Thus, on information and belief, Trulieve Cannabis actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Trulieve US, to directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent under 35 U.S.C. § 271(b).

298.   NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '214 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) A judgment that Defendants have infringed claims of the '248, '402, '181, and '214 patents;

(b) A judgment and order permanently enjoining Defendants, together with their directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, and other related business entities, and all persons in active concert or privity with them, and their successors and assigns, from directly or indirectly infringing claims of the '248, '402, '181, and '214 patents;

(c) A judgment that awards NES damages adequate to compensate for Defendants' infringing activities, including lost profits, but in no event less than a reasonable royalty, in accordance with 35 U.S.C. § 284, including supplemental damages for any post-verdict infringement up until entry of final judgment with an accounting, as needed, together with pre-judgment and post-judgment interest on the damages awarded;

(d) In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '248, '402, '181, and '214 patents;

(e) A judgment declaring that Defendants' infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

(f) Finding that this case is exceptional under 35 U.S.C. § 285, and awarding NES its reasonable attorneys' fees incurred in connection with this action;

(g) Awarding NES its costs and expenses in this action; and

(h) Awarding NES such other and further relief as this Court deems just and appropriate.

Dated: January 12, 2026

Respectfully Submitted,

  /s/ William Barry Blum
W. Barry Blum
VENABLE LLP
wbblum@venable.com
801 Brickell Ave. Suite 1500
Miami, FL 33131
Telephone: (305) 349-2339
Facsimile: (305) 349-2310

Frank C. Cimino, Jr.
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: (202) 344-4569
Facsimile: (202) 344-8300
fccimino@venable.com

William E. Solander
James R. Tyminski
Robert E. Bugg
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Telephone: (212) 370-6241
Facsimile: (212) 307-5598
wsolander@venable.com
jtyminski@venable.com
rebugg@venable.com

*Attorneys for Plaintiff Natural Extraction Systems, LLC*