**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**Case No.: 1:26-cv-20186**

NATURAL EXTRACTION SYSTEMS,
LLC

      Plaintiff,

v.

TRULIEVE INC. and

TRULIEVE CANNABIS CORP.

      Defendants.

                                   /

                       **JURY TRIAL DEMANDED**

**DEFENDANTS TRULIEVE INC. AND TRULIEVE CANNABIS CORP.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

**TABLE OF CONTENTS**

A.  REQUEST FOR HEARING ................................................................................................ 1

B.  INTRODUCTION ........................................................................................................... 1

C.  STATEMENT OF FACTS ................................................................................................ 2

    1.  The Parties ........................................................................................................ 2

    2.  The Asserted Patents ........................................................................................ 3

    3.  NES's Infringement-Related Allegations Concerning Decarboxylation And Distillation ........................................................................................................ 6

D.  STATEMENT OF LAW .................................................................................................. 7

E.  ARGUMENT ................................................................................................................. 9

    1.  The Complaint Fails To State A Claim Of Direct Infringement ..................... 9

        a.  Nearly All Infringement-Related Allegations About Decarboxylation In Trulieve's Manufacturing Processes Are Unsupported And Conclusory ........... 11

        b.  Infringement-Related Allegations That Cite Evidence Are Not Supported By The Cited Evidence ................................................................ 13

    2.  The Complaint Fails To State A Claim Of Inducement Of Infringement By TCC ....... 15

        a.  Claim Of Pre-Suit Inducement Should Be Dismissed ........................................ 15

        b.  Claim Of Post-Suit Inducement Should Be Dismissed ..................................... 16

    3.  The Complaint Fails To State A Claim For Willful Infringement ............................... 16

        a.  Claim of Pre-Suit Willful Infringement Should Be Dismissed .......................... 17

        b.  Claim of Post-Suit Willful Infringement Should Be Dismissed ........................ 18

    4.  Dismissal Should Be With Prejudice ............................................................................ 18

    5.  The Complaint Is An Impermissible Shotgun Pleading .............................................. 19

F.  CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

CASES

*Advanced Screenworks, LLC v. Mosher*,
No. 19-cv-758, 2020 WL 1188468 (M.D. Fla. Mar. 12, 2020)....................................9, 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................7, 13

*Askan v. Faro Techs., Inc.*,
No. 24-cv-1674, 2025 WL 4658580 (M.D. Fla. Dec. 19, 2025)................................9, 12, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................................8

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021)..................................................................................................7, 12

*Boyd v. Warden, Holman Corr. Facility*,
856 F.3d 853 (11th Cir. 2017)......................................................................................................18

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
No. 19-cv-05784, 2020 WL 7392909 (N.D. Cal. July 23, 2020)....................................8, 9, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015) .....................................................................................................................15

*Diesel "Repower", Inc. v. Islander Invs. Ltd.*,
271 F.3d 1318 (11th Cir. 2001)....................................................................................................18

*Gardner v. Engenious Designs LLC*,
No. 21-cv-02364, 2021 WL 5493054 (D. Kan. Nov. 22, 2021) .........................................8, 12

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .............................................................................................................15, 16

*Hall v. United Ins. Co. of Am.*,
367 F.3d 1255 (11th Cir. 2004).....................................................................................................18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) .......................................................................................................................17

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018).............................................................................................15, 16

*Ounjian v. Globoforce, Inc.*,
89 F.4th 852 (11th Cir. 2023).......................................................................................................18

*Peralta v. Cal. Franchise Tax Bd.*,
673 F. App'x 975 (Fed. Cir. 2016) ................................................................................ 8

*QuickLogic Corp. v. Konda Techs., Inc.*,
618 F. Supp. 3d 873 (N.D. Cal. 2022) .................................................................. 8, 9, 12

*Sartorious Bioanalytical Instruments, Inc. v. Gator Bio, Inc.*,
No. 22-cv-01417, 2026 WL 473295 (N.D. Cal. Feb. 19, 2026) ......................... 9, 13

*Scott v. Experian Info. Sols., Inc.*,
No. 18-CV-60178, 2018 WL 3360754 (S.D. Fla. June 29, 2018) ..................... 8, 12

*Smith v. City of Sumiton*,
578 F. App'x 933 (11th Cir. 2014) (unpublished) .............................................. 8, 12

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985) ............................................................................... 17

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) ............................................................................... 19

*Tir Techs. Ltd. v. Comcast Cable Commc'ns, LLC*,
No. 1:25-cv-00885, 2026 WL 686372 (D. Del. Mar. 11, 2026) ....................... 9, 12

*Trebor Indus., Inc. v. Regatta AS*,
No. 10-60371-CIV, 2010 WL 11505130 (S.D. Fla. June 15, 2010) ............... 17, 18

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
No. 21-cv-06655, 2024 WL 813448 (N.D. Cal. Feb. 23, 2024) ........................ 9, 13

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ............................................................................... 19

*Zamperla, Inc. v. I.E. Park Srl*,
No. 6:13-cv-1807-Orl-37KRS, 2014 WL 12610157 (M.D. Fla. Jun. 30, 2014) .................... 15

**RULES**

Federal Rule of Civil Procedure 15(a)(2) ........................................................................... 18

**STATUTES**

35 U.S.C. § 284 ........................................................................................................... 16

Defendants Trulieve Inc. ("Trulieve") and Trulieve Cannabis Corporation ("TCC") respectfully file this Motion To Dismiss Plaintiff Natural Extraction Systems, LLC's ("NES") Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants request that all claims be dismissed with prejudice.

## A.   REQUEST FOR HEARING

Defendants respectfully request a hearing for this Motion. Defendants desire a hearing and believe it would be helpful to the Court because of the technical subject matter involved in this Motion. Defendants estimate that a hearing would require one hour total.

## B.   INTRODUCTION

This is a patent lawsuit in which plaintiff NES accuses Defendants Trulieve and TCC of infringing four Asserted Patents directed to methods for chemically modifying cannabis and/or producing cannabis products. NES alleges that Trulieve has directly infringed the Asserted Patents and that TCC has induced Trulieve's alleged direct infringement. NES also seeks a remedy for willful infringement.

The Asserted Patents are all directed to specific methods of processing a cannabis-containing composition such that a "native cannabinoid" molecule is converted into a "modified cannabinoid" molecule through a process called decarboxylation. By NES's own account, the methods of the Asserted Patents require that decarboxylation occur in a gas phase, ***in a single step— i.e., the distillation step***. The Complaint fails to state a plausible claim of direct infringement for any of the Asserted Patents because the infringement-related allegations that Trulieve's manufacturing processes carry out decarboxylation in the distillation step (and not in a separate prior decarboxylation step) are conclusory, unsupported, and speculative and fail to meet the *Iqbal/Twombly* standard.

1

The Complaint does not allege that Trulieve or TCC knew about any of the Asserted Patents before the filing of this action. In view of the lack of such an allegation, the Complaint fails to state claims of induced infringement by TCC or willful infringement by either Defendant for the period prior to the filing of the Complaint, regardless of whether the Court finds that the Complaint fails to state a claim of direct infringement. The Complaint also lacks *any* allegations (factual or otherwise) that either Defendant willfully infringed any claim of the Asserted Patents. Finally, because the Complaint fails to state a claim of direct infringement, it necessarily also fails to state a claim of induced infringement by TCC for the period since the filing of the Complaint.

Dismissal should be with prejudice. NES's infringement claims are based on a fundamental misunderstanding and mischaracterization of Trulieve's manufacturing processes. Trulieve's manufacturing processes use a separate decarboxylation step, prior to distillation, to convert native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) in a liquid phase, not a gas phase. It would not be possible for NES to state a plausible claim of infringement in view of the fundamental differences between what NES acknowledges the asserted claims of the Asserted Patents require for decarboxylation and what Trulieve actually does. Therefore, amendment of the Complaint would be futile, and NES's infringement claims should be dismissed with prejudice.

## C.      STATEMENT OF FACTS

### 1.      The Parties

Plaintiff NES states it derives revenue by licensing its intellectual property. Compl. ¶ 14. It does not commercialize the purported inventions of the Asserted Patents by making or selling any products. On January 12, 2026, NES filed the present action and three other lawsuits based on the Asserted Patents: *Natural Extraction Systems, LLC v. Stiiizy, Inc.*, Case No. 2:26-cv-10111(EDMI);

2

*Natural Extraction Systems, LLC v. Surterra Texas, LLC d/b/a Goodblend*, Case No. 2:26-cv-00029 (EDTX); *Natural Extraction Systems, LLC v. Green Thumb Industries Inc.*, Case No. 1:26-cv-20190 (SDFL).

Defendant TCC is the parent of Defendant Trulieve. Trulieve and other subsidiaries of TCC collectively are a vertically-integrated cannabis company and the largest manufacturer and retailer of cannabis products in the U.S.

## 2.      The Asserted Patents

NES accuses TCC and Trulieve of infringing four Asserted Patents—U.S. Patents 10,669,248 ("the '248 patent," ECF No. 1, Compl. Ex. A), 11,643,402 ("the '402 patent," *id.* Ex. B), 12,297,181 ("the '181 patent," *id.* Ex. C), and 12,420,214 ("the '214 patent," *id.* Ex. D).

The Complaint describes the technology of all four Asserted Patents as methods to distill and activate cannabinoids in a single step:

> 9. Each of the Asserted Patents discloses methods to ***distill and activate cannabinoids in a single process step*** including the activation of cannabidiolic acid ("CBDA") into CBD and the activation of tetrahydrocannabinolic acid ("THCA") into THC.

Compl. ¶ 9 (emphasis added).

The Complaint states that "native cannabinoid molecules" CBDA and THCA do not have robust psychoactive or medicinal effects. However, CBDA and THCA can be activated or converted into CBD and THC—which have psychoactive or medicinal effects—through a process called "decarboxylation":

> 113. Cannabis flowers contain a variety of naturally occurring molecules called cannabinoids. CBDA is a native cannabinoid molecule found naturally in various strains of the cannabis plant. THCA is another native cannabinoid molecule found naturally in various strains of the cannabis plant.
>
> 114. Defendants extract cannabis oil from cannabis plants. See, e.g., Ex. Q at 4. The resultant cannabis extracts contain the native cannabinoid molecules CBDA and/or THCA.

3

115. CBDA lacks robust medicinal effects. ***CBDA may be converted into CBD by a chemical process called decarboxylation***.

116. THCA lacks robust psychoactive effects. ***THCA may be converted into the psychoactive molecule THC by decarboxylation***. THC and its active metabolite 11-hydroxy-Δ9-tetrahydrocannabinol display psychoactive effects.

Compl. ¶¶ 113-16 (emphasis added).

Decarboxylation involves removing a carboxyl group from the native cannabinoid molecule (e.g., CBDA or THCA), which forms a modified cannabinoid molecule (CBD or THC) and a carbon dioxide molecule:

117. CBDA and THCA each comprise a carboxyl group.

118. Decarboxylation removes the carboxyl group from the CBDA molecule to form a CBD molecule and a carbon dioxide molecule.

119. Decarboxylation removes the carboxyl group from the THCA molecule to form a THC molecule and a carbon dioxide molecule.

120. Defendants make cannabis distillate with methods that modify the native cannabinoid molecule CBDA to form CBD and carbon dioxide and/or that modify the native cannabinoid molecule THCA to form THC and carbon dioxide.

Compl. ¶¶ 117-20.

The asserted claims define methods of chemically modifying a cannabinoid molecule ('248, '402, '181 patents) or methods of producing a product comprising a cannabinoid ('214 patent). The Complaint identifies the asserted claims of the Asserted Patents as follows:

- '248 patent: at least claims 1, 2, 8, and 12

- '402 patent: at least claims 1, 8, 14, 15, and 18

- '181 patent: at least claims 1-4, 9, 19, and 21

- '214 patent: at least claims 1, 2, 4-6, 8, 11, and 18-20

*E.g.*, Compl. ¶¶ 112, 160, 197, 217, 236, 252, 268, 284.

4

This requirement of distilling and activating cannabinoids in a single process step to convert native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) is reflected by the asserted claims of the Asserted Patents. All of the asserted claims include steps for converting a "native" cannabinoid molecule into "modified" cannabinoid molecule by removing a carboxyl group from the native cannabinoid molecule, which results in (1) a carbon dioxide molecule, and (2) a modified cannabinoid molecule in a gas phase.[1] The modified cannabinoid in a gas phase is then condensed so that the modified cannabinoid becomes a liquid distillate. Claim 1 of the '248 patent is representative in this regard:

[1] All asserted claims other than claim 1 of the '214 patent expressly recite these steps. The language of claim 1 of the '214 patent is slightly different from that of the other asserted claims but substantively includes these requirements: Claim 1 of the '214 patent requires in part:

(a) providing a composition comprising cannabinoids, wherein . . . (v) the cannabinoids comprise a native cannabinoid molecule, (vi) the native cannabinoid molecule comprises a carboxyl group, (vii) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), . . .

(b) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (x) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, and (xi) the modified cannabinoid molecule is tetrahydrocannabinol (THC)."

*Id.* ¶ 207, Ex. D col. 33.

> 1. A method to chemically modify a cannabinoid molecule, comprising:
>
> providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;
>
> ***contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase***;
>
> contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate, in which at least 95% of the native cannabinoid molecule is converted into the condensed cannabinoid molecule per mole; and
>
> collecting the liquid distillate.

*Id.* ¶ 108 (emphasis added), Ex. A col. 19.

### 3. NES's Infringement-Related Allegations Concerning Decarboxylation And Distillation

A critical aspect of NES's infringement claims is its allegations that Trulieve's manufacturing processes carry out decarboxylation of native cannabinoid molecules in distillation equipment, in a gas phase, without a separate decarboxylation step prior to distillation:

135. On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule CBDA and/or the native cannabinoid molecule THCA.

136. On information and belief, Defendants manufacture cannabis distillates using processes that ***lack a separate decarboxylation step, in which a cannabis extract is heated above 212° Fahrenheit to convert THCA into THC prior to distillation***.

137. The input to Defendants' wiped-film distillation system is a liquid.

138. On information and belief, Defendants operate one or more wiped-film distillation systems by providing a composition that comprises liquid-phase CBDA and/or liquid-phase THCA.

139. On information and belief, Defendants operate one or more ***wiped-film distillation systems by contacting compositions comprising cannabinoids with***

*sufficient energy to evaporate cannabinoids (by heating cannabis extracts to an elevated temperature) such that the cannabinoids enter a gas phase as a vapor*.

140. On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule CBDA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule, i.e., CBD, in a gas phase.

141. On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule THCA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule, i.e., THC, in a gas phase.

Compl. ¶¶ 135-41 (emphasis added).

**D.      STATEMENT OF LAW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In a patent lawsuit, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).[2] "There must be some factual allegations that, when taken as true, articulate ***why it is***

---

[2] Before their abrogation on December 1, 2015, Federal Rule of Civil Procedure 84 and Form 18 provided a lower pleading standard for patent infringement claims than the standard currently in effect. *See Peralta v. Cal. Franchise Tax Bd.*, 673 F. App'x 975, 980 n.2 (Fed. Cir. 2016) ("The

*plausible* that the accused product infringes the patent claim." *Id.* (emphasis added). "[C]onclusory allegations are insufficient" to state a claim for infringement. *Id.* at 1354.

"While 'information and belief' pleading can sometimes survive a motion to dismiss, a plaintiff must allege specific facts sufficient to support a claim." *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (citation omitted). "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Id.* (citations omitted); *see Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (unpublished) ("for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'" (quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557)).[3] "The inclusion of [the phrase 'information and belief'] creates an 'inference that [the claimant] likely lacks knowledge of the underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree.'" *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 884 (N.D. Cal. 2022) (alterations in original) (quoting *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020); *see Gardner v. Engenious Designs LLC*, No. 2:21-cv-02364, 2021 WL 5493054, at *3 (D. Kan. Nov. 22, 2021).

---

revised Federal Rules of Civil Procedure entered into effect on December 1, 2015. . . . [E]liminate Rule 84, which had allowed for patent infringement claims to be plead at a lower standard in form pleadings than that espoused in *Twombly*.").

[3] In *Twombly*, the Supreme Court declined to accept as true the following allegations: "Plaintiffs allege upon information and belief that [the ILECs] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another." 550 U.S. at 551 (alteration in original).

The same standards apply for pleading a claim of patent infringement. Conclusory statements are insufficient. *Tir Techs. Ltd. v. Comcast Cable Commc'ns, LLC*, No. 1:25-cv-00885, 2026 WL 686372, at *2-4 (D. Del. Mar. 11, 2026) ("'mere conclusory statements' . . . are insufficient to state a claim of infringement" (citing *Iqbal*, 556 U.S. at 679; *Bot M8*, 4 F.4th at 1352-53)); *Askan v. Faro Techs., Inc.*, No. 6:24-cv-1674, 2025 WL 4658580, at *2-3 (M.D. Fla. Dec. 19, 2025) ("If the allegations are more conclusory than factual, the court need not assume their truth."), *report and recommendation adopted*, No. 6:24-cv-1674, 2026 WL 767870 (M.D. Fla. Jan. 14, 2026); *Celgard*, 2020 WL 7392909, at *5; *QuickLogic*, 618 F. Supp. 3d at 884; *Advanced Screenworks, LLC v. Mosher*, No. 2:19-cv-758-FtM-29MRM, 2020 WL 1188468, at *2 (M.D. Fla. Mar. 12, 2020). And "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Advanced Screenworks*, 2020 WL 1188468, at *2.

Furthermore, when a complaint purports to provide factual support for otherwise conclusory allegations by citing evidence, but the cited evidence does not actually support the allegations, such allegations are insufficient to state a claim. *Sartorious Bioanalytical Instruments, Inc. v. Gator Bio, Inc.*, No. 5:22-cv-01417, 2026 WL 473295, at *7 (N.D. Cal. Feb. 19, 2026); *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, No. 21-cv-06655, 2024 WL 813448, at *4 (N.D. Cal. Feb. 23, 2024)

**E.     ARGUMENT**

NES's claims of direct infringement, induced infringement, and willful infringement should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

**1.     The Complaint Fails To State A Claim Of Direct Infringement**

NES describes the technology of the Asserted Patents as follows: "Each of the Asserted Patents discloses methods to ***distill and activate cannabinoids in a single process step*** including the activation of cannabidiolic acid ('CBDA') into CBD and the activation of

9

tetrahydrocannabinolic acid ('THCA') into THC." Compl. ¶ 9 (emphasis added). The asserted claims all require distilling and activating cannabinoids in a single process step to convert native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) in a gas phase. Claim 1 of the '248 patent is representative in this regard:

> 1. A method to chemically modify a cannabinoid molecule, comprising:
>
> providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;
>
> ***contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase***;
>
> contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate, in which at least 95% of the native cannabinoid molecule is converted into the condensed cannabinoid molecule per mole; and
>
> collecting the liquid distillate.

*Id.* ¶ 108 (emphasis added), Ex. A col. 19.

As set forth in the Complaint, an essential aspect of NES's infringement claims is its allegations that Trulieve's manufacturing processes involve converting native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) by decarboxylating the native cannabinoid molecules to produce modified cannabinoid molecules in a gas phase, ***in a single step—i.e., the distillation step***—of the manufacturing processes. The Complaint fails to state a plausible claim of infringement for any of the Asserted Patents because the infringement-related allegations that Trulieve's manufacturing processes carry out decarboxylation in the distillation step (and not in a separate prior decarboxylation step) are conclusory, unsupported, and speculative.

10

        **a.**       **Nearly All Infringement-Related Allegations About Decarboxylation In Trulieve's Manufacturing Processes Are Unsupported And Conclusory**

NES's core infringement-related allegations that Trulieve's manufacturing processes carry out decarboxylation in the distillation step (and not in a separate prior decarboxylation step) fail the *Twomly/Iqbal* standard because they are unsupported and conclusory, often trying to conceal their lack of plausibility behind a thin veneer of "information and belief."

The Complaint contends that Trulieve does not carry out a separate decarboxylation step prior to distillation:

> 136. On information and belief, Defendants manufacture cannabis distillates using processes that *lack a separate decarboxylation step, in which a cannabis extract is heated above 212° Fahrenheit to convert THCA into THC prior to distillation*.

Compl. ¶ 136 (emphasis added). Then the Complaint alleges that Trulieve's manufacturing processes carry out decarboxylation in the distillation step:

> 138. On information and belief, Defendants operate one or more *wiped-film distillation systems* by providing a composition that comprises liquid-phase CBDA and/or liquid-phase THCA.

> 139. On information and belief, Defendants operate one or more *wiped-film distillation systems* by contacting compositions comprising cannabinoids with sufficient energy to evaporate cannabinoids (by heating cannabis extracts to an elevated temperature) such that *the cannabinoids enter a gas phase as a vapor*.

> * * *

> 141. On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and *the energy converts the native cannabinoid molecule THCA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule, i.e., THC, in a gas phase*.

*Id.* at ¶¶ 138-41 (emphasis added). The foregoing allegations appear in the section of the Complaint that discusses the '248 patent, but they are also expressly applied to the other Asserted Patents. *Id.* ¶ 188 ('402 patent), ¶ 205 ('181 patent), ¶ 234 ('214 patent).

11

"Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Scott*, 2018 WL 3360754, at *6 (citations omitted); *see Smith*, 578 F. App'x at 936 n.4 (citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557)). "[C]onclusory allegations are insufficient" to state a claim for infringement. *Bot M8*, 4 F.4th at 1354; *see Tir Techs.*, 2026 WL 686372, at *2-4 ("'mere conclusory statements' . . . are insufficient to state a claim of infringement" (quoting *Iqbal*, 556 U.S. at 679; *Bot M8*, 4 F.4th at 1352-53)); *Askan*, 2025 WL 4658580, at *2-3; *Celgard*, 2020 WL 7392909, at *5; *QuickLogic*, 618 F. Supp. 3d at 884; *Advanced Screenworks*, 2020 WL 1188468, at *2. Indeed, "[t]he inclusion of [the phrase 'information and belief'] creates an 'inference that [the claimant] likely lacks knowledge of the underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree.'" *QuickLogic*, 618 F. Supp. 3d at 884 (quoting *Celgard*, 2020 WL 7392909, at *5); *see Gardner*, 2021 WL 5493054, at *3.

The foregoing allegations in paragraphs 136 and 138 through 141 of the Complaint that Trulieve's manufacturing processes carry out decarboxylation in the distillation step (and not in a separate prior decarboxylation step) are on information and belief, unsupported, and conclusory. There is no factual basis for such allegations. For example, the Complaint does not allege any facts related to how Trulieve's manufacturing processes or equipment carry out decarboxylation and distillation in a single step; and, as discussed below, the various exhibits it cites do not support its allegations. Such allegations are not entitled to a presumption of truth and fail to state a plausible claim of infringement.

12

### b. Infringement-Related Allegations That Cite Evidence Are Not Supported By The Cited Evidence

The section of the Complaint that alleges infringement of the '214 patent relies on a website printout (Ex. P):

> 226. Defendants operate each of their **wiped-film distillation systems** by contacting a cannabis extract with a heated surface of the distillation system and exposing the surface area of the cannabis extract to a vacuum to **contact the cannabis extract with sufficient energy to convert the liquid-phase native cannabinoid molecule THCA into carbon dioxide and the gas-phase modified cannabinoid molecule THC**. *See, e.g.*, Ex. P.

Compl. ¶ 226 (emphasis added).

Exhibit P appears to be a printout of a webpage from the website of Root Sciences, which NES alleges imported distillation equipment made by German company VTA. *Id.* ¶ 134. However, Exhibit P does not support the allegations in paragraph 226. Rather than establishing that Trulieve uses a particular distillation method, Exhibit P shows that there are *various* models of distillation equipment that can be used to produce cannabinoid distillate and provides no information on whether any of models are used by Trulieve, let alone how Trulieve allegedly uses them.

"Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Advanced Screenworks*, 2020 WL 1188468, at \*2; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Furthermore, when a complaint purports to provide factual support for otherwise conclusory allegations by citing evidence, but the cited evidence to not actually support the allegations, such allegations are insufficient to state a claim. *Sartorious Bioanalytical Instruments*, 2026 WL 473295, at \* 7; *Viavi Sols.*, 2024 WL 813448, at \*4,

Nothing in Exhibit P speaks to whether the distillation equipment shown in the webpage carries out decarboxylation by "contact[ing] the cannabis extract with sufficient energy to convert the liquid-phase native cannabinoid molecule THCA into carbon dioxide and the gas-phase

13

modified cannabinoid molecule THC." And nothing in Exhibit P excludes the use of a separate decarboxylation step prior to distillation. Accordingly, the allegations in paragraph 226 fail to state a claim of infringement.

Beyond paragraph 226 and Exhibit P, there are other factual allegations that cite exhibits, but neither those allegations nor the cited exhibits are of help to NES. For example, paragraphs 129-134, 142, 161, and 184 allege that Trulieve carries out distillation to make cannabis distillate and cite Exhibits O, P, V, W, X, and Z:

- Exhibit O appears to be a printout from Root Science's website that lists many cannabis companies, including Trulieve.

- Exhibit P is discussed above.

- Exhibit V appears to be a resume of Joshua Thaw, a Trulieve employee, which states in part that he had responsibilities involving distillation.

- Exhibit W appears to be an article from a cannabis-related publication. At various points, it quotes Joshua Katz, a Trulieve employee, about various things, including distillation. It also mentions decarboxylation of cannabis for food by baking it on a baking sheet and of certain cannabinoids using a microwave reactor.

- Exhibits X and Z appear to be printouts of Mr. Katz's and Mr. Thaw's LinkedIn profiles.

Nothing in paragraphs 129-34, 142, 161, and 184 or Exhibits O, P, V, W, X, and Z speaks to whether the distillation equipment used by Trulieve carries out decarboxylation or excludes the use of a separate decarboxylation step prior to distillation. Accordingly, the allegations in paragraphs 129-34, 142, 161, and 184 also fail to state a claim of infringement.

**2.      The Complaint Fails To State A Claim Of Inducement Of Infringement By TCC**

In addition to direct infringement, NES alleges that TCC induces Trulieve to infringe the Asserted Patents. Compl. ¶¶ 240-50, 256-66, 272-82, 288-98. Because NES fails to state a claim of both pre- and post-suit infringement, these claims should be dismissed.

"In a complaint for indirect patent infringement—that is, induced or contributory infringement—the full-fledged *Twombly* plausibility standard governs." *Zamperla, Inc. v. I.E. Park Srl*, No. 6:13-cv-1807-Orl-37KRS, 2014 WL 12610157, at *4 (M.D. Fla. Jun. 30, 2014). "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (citation modified); *see also Zamperla*, 2014 WL 12610157, at *5. Where a plaintiff fails "to plead the predicate of direct infringement," that plaintiff has failed to plead inducement of infringement. *Askan*, 2025 WL 4658580, at *5.

Inducement of infringement requires knowledge of the patent *and* knowledge that the induced acts constitute patent infringement. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

**a.      Claim Of Pre-Suit Inducement Should Be Dismissed**

Regardless of whether NES's claims of direct infringement are dismissed, at least partial dismissal of NES's claims for induced infringement prior to the filing of its lawsuit is appropriate because there are no allegations that either TCC or Trulieve knew about the Asserted Patents before the filing of the lawsuit, much less that TCC intended to cause Trulieve to directly infringe any Asserted Patent prior to the filing of the lawsuit. To the contrary, NES's Complaint only alleges that Defendants had knowledge of the Asserted Patents "at least as of the filing date of this complaint." Compl. ¶¶ 240, 256, 272, 288. Since NES does not allege facts showing that TCC or

15

Trulieve had any knowledge of the Asserted Patents and an intent to infringe them prior to the filing of this lawsuit, NES's claims for pre-suit induced infringement should be dismissed. *Glob.-Tech*, 563 U.S. at 765-66.

### b.       Claim Of Post-Suit Inducement Should Be Dismissed

NES's claims of post-suit induced infringement by TCC should also be dismissed. As shown above in Section IV.A, NES has failed to state a claim of direct infringement, and thus "[t]here can be no inducement . . . without an underlying act of direct infringement." *Nalco*, 883 F.3d at 1355 (first alteration in original) (citations omitted).

Even if NES's claims for direct infringement are found to be sufficiently pleaded, the Complaint must further allege that Trulieve had knowledge that the allegedly inducing acts constituted patent infringement. The Complaint contains no facts relating to Trulieve's knowledge and intent, yet simply parrots the legal requirement that TCC knowingly caused its subsidiaries, including Trulieve, to infringe the Asserted Patents. Compl. ¶¶ 240-50, 256-66, 272-82, 288-98. This is insufficient to state a claim for post-suit induced infringement, and therefore this claim should be dismissed. *Glob.-Tech*, 563 U.S. at 765-66.

### 3.       The Complaint Fails To State A Claim For Willful Infringement

While NES's Complaint does not contain any allegations that Trulieve willfully infringed the Asserted Patents, NES nevertheless requests "[a] judgment declaring that Defendants' infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284." Compl. at 55. Thus, NES's unsupported request for a determination willful infringement should be denied for failure to state a claim.

Section 284 of the Patent Act states that "the court may increase the damages [for patent infringement] up to three times the amount found or assessed." 35 U.S.C. § 284. "Awards of

16

enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate." *Id*. at 103-04.

"To state a claim for willful infringement, the plaintiff must assert that the defendant had knowledge of the patent ***and*** of his infringement." *Trebor Indus., Inc. v. Regatta AS*, No. 10-60371- CIV, 2010 WL 11505130, at *1 (S.D. Fla. June 15, 2010) (emphasis added); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."). "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs.*, 579 U.S. at 105. "[A]n allegation that a defendant acted 'willfully'—absent factual allegations that show the claim is plausible—is conclusory and subject to dismissal." *Trebor Indus.*, 2010 WL 11505130, at *1.

### a.      Claim of Pre-Suit Willful Infringement Should Be Dismissed

Similar to its inducement claims, NES makes no allegations that Trulieve knew about the Asserted Patents before the filing of the lawsuit or that Trulieve deliberately infringed any of the Asserted Patents. *Trebor Indus.*, 2010 WL 11505130, at *2 ("Trebor alleges no facts whatsoever to support its allegation that Regatta had knowledge of the '678 Patent and deliberately infringed on it. Therefore, absent facts detailing Regatta's knowledge, Trebor's willful infringement claim is insufficient."). Because NES did not assert that Trulieve had knowledge of the Asserted Patents and Trulieve's infringement of such patents, at least NES's pre-suit willfulness claim should be dismissed for failure to state a claim. *Id.*; *State Indus.*, 751 F.2d at 1236.

17

### b.    Claim of Post-Suit Willful Infringement Should Be Dismissed

Although NES parrots in its Complaint that Defendants "had actual knowledge" of the Asserted Patents "and that their processes to make cannabis distillate infringe at least one claim thereof" as of the filing date of the Complaint (Compl. ¶¶ 240, 256, 272, 288), these claims for post-suit willfulness still fail because they lack supporting factual allegations showing such claims are plausible. *Trebor Indus.*, 2010 WL 11505130, at \*1 ("[A]n allegation that a defendant acted 'willfully'—absent factual allegations that show the claim is plausible—is conclusory and subject to dismissal."). NES's conclusory post-suit willfulness claim should therefore also be dismissed.

### 4.    Dismissal Should Be With Prejudice

Ordinarily, a court should "freely give" leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court may properly deny leave to amend when an amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should be denied where, among other things, proposed amendments would not cure the prior deficiencies. *Diesel "Repower", Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1321 (11th Cir. 2001) (quoting *Foman*, 371 U.S. at 182). "An amendment is considered futile when the claim, as amended, would still be subject to dismissal." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017); *see also Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023).

As discussed above, all asserted claims of the Asserted Patents require distilling and activating (i.e., decarboxylating) native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) in a single process step. All of NES's infringement claims are based on allegations that Trulieve's manufacturing processes lack a separate decarboxylation step prior to distillation and involve converting native cannabinoid molecules into modified cannabinoid

18

molecules by decarboxylating the native cannabinoid molecules to produce modified cannabinoid molecules in a gas phase, ***in a single step—i.e., the distillation step***—of the manufacturing processes. The Complaint fails to state a plausible claim of infringement for any of the Asserted Patents because the infringement-related allegations that Trulieve's manufacturing processes carry out decarboxylation in the distillation step (and not in a separate prior decarboxylation step) are conclusory, unsupported, and speculative.

This is not surprising because such allegations are simply wrong, and Trulieve will demand NES's asserted good faith basis for making them. Trulieve manufacturing processes use a separate decarboxylation step, prior to distillation, to convert native cannabinoid molecules (e.g., THCA) into modified cannabinoid molecules (e.g., THC) in a liquid phase, not a gas phase. Amendment of the complaint would be futile because it would not be possible for NES to cure the pleading deficiencies in the Complaint. Specifically, it would not be possible for NES to state a plausible claim of infringement in view of the fact that Trulieve's manufacturing processes use separate decarboxylation and distillation steps, and decarboxylation occurs in a liquid phase, not a gas phase. Therefore, NES's infringement claims should be dismissed with prejudice.

### 5. The Complaint Is An Impermissible Shotgun Pleading

The Complaint also fails because it is an impermissible shotgun pleading because "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," therefore obscuring the basis of the claims and failing to provide adequate notice of which allegations support which claims. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 n.9 (11th Cir. 2002) (calling these pleadings "quintessential shotgun pleading") (citation omitted). The

19

Complaint repeatedly incorporates large swaths of allegations when far more specific and technical allegations would be required for each step of NES's patent infringement theory.

Because the Complaint improperly lumps together allegations and claims without clearly delineating the factual basis for each asserted cause of action, it fails to satisfy the basic pleading requirements of Rules 8 and 10. Dismissal is therefore warranted on this independent ground.

**F.      CONCLUSION**

For the reasons stated above, Trulieve respectfully asks this Court to grants its motion to dismiss NES's complaint for failure to state a claim.

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via e-filing on April 21, 2026 on all counsel or parties of record as listed below:

W. Barry Blum (FBN 379301)
VENABLE LLP
bblum@venable.com
801 Brickell Ave, Suite 1500
Miami, FL 33121
Telephone: (305) 349-2339
Facsimile: (305) 349-2310

Frank C. Cimino, Jr.
VENABLE LLP
600 Massachusetts Avenue,
NW Washington, DC  20001
Telephone: (202) 344-4569
Facsimile: (202) 344-8300
fccimino@venable.com

William E. Solander
James R. Tyminski
Robert E. Bugg
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Telephone: (212) 370-6241
Facsimile: (212) 307-5598
wsolander@venable.com
jtyminski@venable.com
rebugg@venable.com

21

Date: April 21, 2026

Respectfully submitted,

**OLDER LUNDY KOCH & MARTINO**

*/s/ Thomas H. Stanton*

Thomas H. Stanton, Esq.
Fla. Bar No. 127444
1000 W Cass Street
Tampa, Florida 33606
(813) 254-8998
tstanton@olderlundylaw.com

and

**PERKINS COIE LLP**

John H. Gray, Esq. (*pro hac vice*)
Makenzi Galvan, Esq. (*pro hac vice*)
2525 E Camelback Rd
Suite 500
Phoenix, AZ 85016
JHGray@perkinscoie.com
MGalvan@perkinscoie.com
(602) 351-8000

Sarah E. Fowler, Esq. (*pro hac vice*)
Taryn T. Willet, Esq. (*pro hac vice*)
3150 Porter Drive
Palo Alto, CA 94304
SFowler@perkinscoie.com
TWillet@perkinscoie.com
(650) 838-4300

Maria A. Stubbings, Esq. (*pro hac vice*)
700 13th St., NW
Suite 800
Washington, D.C. 20005
MStubbings@perkinscoie.com
(202) 654-6200

Gene W. Lee, Esq. (*pro hac vice*)
1155 Avenue of the Americas
22nd Floor
New York, NY 10036
GLee@perkinscoie.com
(212) 262-6900

22

A. Buke Hiziroglu, Esq. (*pro hac vice*)
1301 2nd Ave
Suite 4200
Seattle, WA 98101
AHiziroglu@perkinscoie.com
(206) 359-8000

Aaron E. Schindler, Esq. (*pro hac vice*)
33 East Main Street
Suite 201
 Madison, WI 53703
ASchindler@perkinscoie.com
(608) 663-7460

*Attorneys for Defendants Trulieve Inc. and
Trulieve Cannabis Corp.*

23